In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-19-00120-CV**

**IN THE INTEREST OF C.E.H.**

**On Appeal from the 279th District Court**
**Jefferson County, Texas**
**Trial Cause No. F-233,677**

**MEMORANDUM OPINION**

S.H. (Father) appeals the Order in Suit Affecting the Parent-Child Relationship concerning his child C.E.H.[1] In three issues, Father asserts that there was no evidence to support the trial court's judgment regarding conservatorship, child support, and visitation. For the reasons explained below, we affirm in part and reverse and remand in part the trial court's judgment.

---

[1] To preserve the parties' privacy, we refer to the parties as "Mother" and "Father" and the child by their initials. *See* Tex. Fam. Code. Ann § 109.002(d); Tex. R. App. P. 9.8.

## Background

The record shows that Father and K.P. (Mother) were in a dating relationship when C.E.H. was born. Father and Mother agreed to let Father move to Harris County with C.E.H., and, according to Mother, she provided child support for the child while the child resided in Harris County with Father. Mother and Father did not have a court order. In November 2018, Mother filed a Suit Affecting the Parent-Child Relationship seeking primary managing conservatorship of C.E.H. and for Father to be ordered to pay child support and medical support for C.E.H. Father appeared pro se at the temporary hearing in November 2018. The temporary orders named both parents as joint managing conservators, with Mother as the conservator with the right to designate the child's residence. Father was also ordered to pay child support and medical support.

The case was set for a final hearing on January 16, 2019. On that date, Mother appeared with her attorney and Father appeared pro se. The parties announced that they had reached an agreement. Mother testified that she and Father had agreed to be named joint managing conservators of C.E.H., Mother would be granted the exclusive right to designate C.E.H.'s residence, Father would pay "guideline child support[,]" Father would reimburse Mother for insurance premiums she paid for the child, and Father would have a "standard possession order" for visitation with C.E.H. Father testified that he agreed to be named joint managing conservators of C.E.H.,

2

that Mother would be given the exclusive right to designate the child's residence, he would pay "guideline child support" for C.E.H., he would reimburse Mother for insurance premiums for C.E.H., and he would be awarded a "standard possession order" for visitation with C.E.H. The trial court approved the parties' agreement regarding "paternity, conservatorship and support of [the] child" and found that it was in the child's best interest. The trial court granted Mother's petition and rendered judgment. The trial court then signed an "Order Setting Hearing to Sign" and set order entry for March 4, 2019.

After the hearing but before the date set for entry of the order, Father hired trial counsel who filed a counterpetition on February 27, 2019. Additionally, Father filed an answer to Mother's petition and other pleadings to contest Mother's assertions. On March 4, 2019, the order entry date, both Mother's and Father's attorneys appeared, and Father's attorney objected to the entry of the order. Father's attorney stated that Father contends that he and Mother had a "different agreement" than the one announced in court by Mother's attorney. He stated that his client no longer desired joint managing conservatorship with Mother having the exclusive right to designate the child's residence. His client also did not agree to "standard possession." Finally, Father's attorney stated that Father disagreed with the support calculations Mother's attorney provided and that the order prepared by Mother's attorney did not reflect the court's order regarding conservatorship, visitation,

support, tax elections for the child, and the child's estate. Even though the proposed order was not agreed, the trial court signed it and told counsel they could amend it within "30 days" if by agreement. Father timely appealed.

## Standard of Review

We review the trial court's decision regarding child support, conservatorship, possession, and visitation under an abuse of discretion standard. *Iliff v. Iliff*, 339 S.W.3d 126, 133 (Tex. App.—Austin 2009), *aff'd*, 339 S.W.3d 74 (Tex. 2011). Pursuant to Texas Rule of Civil Procedure 11, settlement agreements must be in writing, signed, and filed with the court, or must be made in open court and entered of record. *See* Tex. R. Civ. P. 11. A Rule 11 agreement must be interpreted by the trial court based on the intention of the parties as expressed in the entire agreement in light of the surrounding circumstances, including the state of the pleadings, the allegations therein and the attitude of the parties with respect to the issues. *In re Acevedo*, 956 S.W.2d 770, 775 (Tex. App.—San Antonio 1997, no writ.). The trial court's determination regarding the parties' intent "should be reviewed like a factual determination and should only be held to be an abuse of discretion if the trial court 'could reasonably have reached only one decision.'" *Id.* (quoting *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex. 1992)).

## Consent to the Rule 11 Agreement

"Rule 11 agreements 'are contracts relating to litigation.'" *Kanan v. Plantation Homeowner's Ass'n, Inc.*, 407 S.W.3d 320, 327 (Tex. App.—Corpus Christi 2013, no pet.) (quoting *Trudy's Tex. Star, Inc. v. City of Austin*, 307 S.W.3d 894, 914 (Tex. App.—Austin 2010, no pet.)). A party is not allowed to withdraw consent to a Rule 11 agreement after the trial court has rendered its judgment. *See Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983); *In re R.F.*; No. 09-16-00240-CV, 2018 WL 2054930, at *4 (Tex. App.—Beaumont May 3, 2018, no pet.) (mem. op.). A trial court renders judgment when it "'officially announces its decision in open court or by written memorandum filed with the clerk.'" *State v. Naylor*, 466 S.W.3d 783, 788 (Tex. 2015) (quoting *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995)). Thus, a rendering is not an event to be granted in the future, but a complete disposal of the issues before the court at that moment. *See Araujo v. Araujo,* 493 S.W.3d 232, 235–36 (Tex. App.—San Antonio 2016, no pet.) (citations omitted) (noting that a judgment "routinely goes through three stages: rendition, reduction to writing and judicial signing, and entry[,]" and to be a judgment, a trial court's oral pronouncement must demonstrate "intent to render a full, final, and complete judgment" at that time, illustrating acceptable statements such as "your divorce is granted" or "I'll grant your divorce today").

5

After hearing the parties' testimony in open court, the trial court stated the following about their Rule 11 agreement:

> THE COURT: Okay. All right. Then the Court will find that the Court has jurisdiction over the subject matter and over the parties. I'll find that the parties have reached an agreement concerning the paternity, conservatorship and support of the child. I'll find that it's in the child's best interest. So, the petition is granted and rendered. Motion to enter is March 4th.

"In order to be an official judgment, the trial court's oral pronouncement must indicate an intent to render a full, final, and complete judgment at that point in time." *In re R.F., 2018 WL 2054930, at *4* (citations omitted). The trial court did not state that it would grant the petition at some time in the future. Rather, the trial court stated it accepted the parties' agreement, that it "granted" Mother's petition, and "rendered." *See In re L.A.-K.*, 596 S.W.3d 387, 394 (Tex. App.—El Paso 2020, no pet.) (citations omitted) ("[A]n oral pronouncement does not constitute a rendition of judgment 'if essential issues remain pending when the pronouncement is made.'"). Although the trial court set the case for order entry, that reset has no bearing on whether the trial court rendered judgment at that time. *See In re J.P.*, No. 13-18-00648-CV, 2020 WL 103858, at *4 (Tex. App.—Corpus Christi Jan. 9, 2020, pet. denied) (mem. op.) (explaining that entry of a judgment is purely ministerial, and a trial court rendered judgment when it announced the acceptance of the

agreement in court). Therefore, Father was not allowed to withdraw consent to the rule 11 agreement after it was properly rendered by the trial court.[2]

## Compliance with the Rule 11 Agreement

In his three issues, Father argues that the trial court failed to comply with the agreement of the parties because there was "no evidence to support" (1) the trial court's finding of child support; (2) the specifics in the standard possession order; and (3) designating the Mother as the parent with the exclusive right to enroll the child in school.[3]

When a trial court renders judgment on the parties' settlement agreement, the judgment must be in strict compliance with the terms of the agreement. *Patel v. Eagle Pass Pediatric Health Clinic, Inc.*, 985 S.W.2d 249, 252 (Tex. App.—Corpus Christi 1999, no pet.) (citing *Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976); *Nuno v. Pulido*, 946 S.W.2d 448, 451 (Tex. App.—Corpus Christi

---

[2] We note that previously this Court has explained that a judgment was not rendered when the trial court reset the case for the parties to prepare an order that "needs to be signed off on by the parties and the counsel." *In re K.B.*, No. 09-19-00239-CV, 2019 WL 6598618, at *1 (Tex. App.—Beaumont Dec. 5, 2019, no pet.) (mem. op.). As the parties had to agree and sign off on the order, there were no oral statements by the trial court that it rendered, and the Mother properly revoked her consent before the trial court rendered judgment. *Id.* at *4. The absence of the trial court's rendering makes this case distinguishable from the facts presently before this court, as the trial court orally rendered on the date of its oral pronouncement. As such, Father could not revoke his agreement after the trial court rendered its judgment.

[3] Although neither party pled for a paternity finding, Father does not contest paternity on appeal.

7

1997, no writ)). "The trial court has no power to supply terms, provisions, or conditions not previously agreed to by the parties." *Keim v. Anderson*, 943 S.W.2d 938, 946 (Tex. App.—El Paso 1997, no writ) (citations omitted). If the terms of the court's judgment conflict with the terms of the settlement agreement, the judgment is subject to reformation as being unenforceable. *Clanin v. Clanin,* 918 S.W.2d 673, 678 (Tex. App.—Fort Worth 1996, no writ). If a judgment improperly removes or adds material terms, the "judgment [is not 'in strict or literal compliance" with the terms recited into the record[.]'" *Chislom v. Chislom*, 209 S.W.3d 96, 98 (Tex. 2006) (quoting *Vickrey*, 532 S.W.2d at 292). "When a consent judgment is rendered without consent or is not in strict compliance with the terms of the agreement, the judgment must be set aside." *Id.*

## Issue One: Father's Support Obligation

In his first issue Father argues the evidence is insufficient to support the trial court's child support finding. Father asserts that because the agreement placed on the record only delineates that he will pay Mother "guideline child support[,]" the evidence is insufficient to show that the calculated amount in the final order was correct.

Texas Family Code section 154.125 outlines guideline support for income under $7500.00. *See* Tex. Fam. Code Ann. § 154.125. This section provides an appropriate calculation based on the income of the obligor parent and outlines an

appropriate percentage basis for support based on the parent's net resources and number of children among other factors. *See id.* Our sister court explained that if an agreement only requires that an obligor pay guideline support, the agreement "failed to resolve the amount of child support[,]" and the resulting order is invalid. *Compare In re D.L.S & C.D.S.*, No 04-10-00069-CV, 2011 WL 240683, at *3 (Tex. App.—San Antonio Jan. 26, 2011, no pet.) (mem. op.), *with In re K.N.M*, No. 2-08-308-CV, 2009 WL 2196125, at *11 (Tex. App.—Fort Worth July 23, 2009, no pet.) (mem. op.) (stating the calculation of support in the final order did not conflict with parties' agreement because there was evidence of the Father's income as the Father testified about his monthly income); *see also In re A.W.G.*, No. 02-10-00376-CV, 2011 WL 3795237, at *5–6 (Tex. App.—Fort Worth Aug. 25, 2011, no pet.) (mem. op.) (using trial testimony to calculate Father's child support obligation under the rule 11 agreement that he pay guideline support). The record before us does not show the trial court had any evidence of Father's income to support that the amount calculated in the final order is consistent with the parties' agreement for guideline support.[4] Therefore, the trial court could not comply with the parties' agreement regarding guideline support in the final order because the trial court had no way of

---

[4] *See In re A.T.,* No 05-16-00539-CV, 2017 WL 2351084, *16 (Tex. App.—Dallas May 31, 2017, no pet.) (explaining that the trial court cannot consider evidence from a temporary hearing when rendering on a divorce decree if the evidence "was not introduced or admitted at the trial[.]").

knowing what that agreement was. Therefore, the trial court failed to strictly comply with the parties' rule 11 agreement in calculating guideline support. *See Chislom*, 209 S.W.3d at 98. (explaining that a judgment must be in strict compliance with the terms of the consent judgment or "set aside"). We sustain Father's first issue.

### Issue Two: Standard Possession Order

Father argues in his second issue that the evidence is insufficient to support the trial court's possession order. Father points to several sections of the trial court's order that he argues deviate from the standard possession language provided in Texas Family Code section 153.312. *See* Tex. Fam. Code Ann. § 153.312.

Our review of the record shows that the parties agreed to a standard possession order without any testimony from Mother or Father as to what is to be included in the standard possession order other than Father will receive "every first, third and fifth weekend[,]" "alternating major holidays[,]" "spring break[,]" and "[t]ime in the summer[.]" Father directs this Court's attention to several instances in the final order that he argues deviate from the Section 153.3101–153.317 Standard Possession Order as agreed to by the parties. *See id.* §§ 153.3101–153.317. First, Father argues that the trial court abused its discretion when it included language regarding weekend possession not found under section 153.312. *See id*. § 153.312. Second, Father argues that the trial court abused its discretion by failing to include language for standard possession for parties who reside over 100 miles apart per section

153.313. *See id.* § 153.313. Third, Father asserts that the trial court's addition of language allowing Mother exclusive possession of the child at all times not designated by the possession order violates the Family Code. Finally, Father argues that the possession order deviates from the standard possession order by requiring Father to pick up and drop off the child at Mother's residence after his times of possession.

First, we address Father's argument regarding section 153.312 and weekend visitation. Section 153.312(a) provides:

> (a) If the possessory conservator resides 100 miles or less from the primary residence of the child, the possessory conservator shall have the right to possession of the child as follows:
> > (1) on **weekends throughout the year** beginning at 6 p.m. on the first, third, and fifth Friday of each month and ending at 6 p.m. on the following Sunday; and
> > (2) on Thursdays of each week during the regular school term beginning at 6 p.m. and ending at 8 p.m., unless the court finds that visitation under this subdivision is not in the best interest of the child.

*Id.* § 153.312(a)(1)–(2) (emphasis added).

The Order in Suit Establishing the Parent-Child Relationship signed by the trial court contained the following:

1. Weekends –

> On **weekends that occur during the regular school term**, beginning at 6:00 p.m., on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday.

11

On **weekends that do not occur during the regular school term**, beginning at 6:00 p.m., on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday.

(emphasis added).

The trial court's failure to track the exact language provided in section 153.312 standard possession order has not been shown to deviate from the parties' agreement. The parties agreed to follow "standard possession" and our review shows that although the trial court included additional language delineating weekends during the "regular school term" and "weekends that do not occur during the regular school term," the final order did not alter Father's possession from the Standard Possession Order. Both the final order and standard possession order cover the entire year and gave Father the same amount of possession on the same days. *See id.* This additional language does not deviate from the weekend possession provided to Father in section 153.312 and conforms to the parties' agreement as expressed in court.

Father's second argument regarding the trial court's failure to include a standard possession order for parents who reside over 100 miles apart also lacks merit. Section 153.313 is part of the standard possession order as provided in the Family Code. *See id.* § 153.313. Our review of the record reveals that the final order did include such a provision. Specifically, the order provides for situations "when [Father] resides more than 100 miles from the residence of the child, [Father] shall

12

have the right to possession of the child as follows . . ." and outlines Father's periods of possession consistent with section 153.313. Because the provision for standard possession for parents who reside over 100 miles apart included in the final order complies with the Family Code, Father has failed to show that it does not conform with the parties' agreement as expressed in court.

Third, Father contends that he did not agree to Mother having possession of C.E.H. during all undesignated periods of possession. Mother and Father agreed on the record that they be named joint managing conservators with Mother given the right to designate the child's primary residence. Mother was given a superior right to possession by that agreement. *See id.* § 153.134(b)(1) (stating a trial court shall "designate the conservator who has the exclusive right to determine the primary residence of the child"); *see also In re Casanova*, No. 05-14-01166-CV, 2014 WL 6486127, at *7 (Tex. App.—Dallas Nov. 20, 2014, no pet.) (mem. op.) (ruling that the temporary order that granted Mother right to possession of the child in all undesignated time periods complied with the parties' agreement that the child's primary residence be with Mother); *Garza v. Garza*, 217 S.W.3d 537, 545 (Tex. App.—San Antonio 2006, no pet.) (explaining that by giving rights to a father such as the exclusive right to determine the child's residence created a superior right of possession). Accordingly, any times not designated to the Father in the possession schedule fall to Mother as the conservator designated with the right to choose the

child's primary residence. This provision does not contradict the parties' agreement, rather it complied with their terms that Mother be named the conservator with the exclusive right to designate C.E.H.'s primary residence.

Finally, Father's assertion that the final order's requirement that he pick up and drop off the child at Mother's residence fails to demonstrate a lack of compliance with the parties' agreement constituting an abuse of discretion. Section 153.316 provides general terms for every standard possession order regardless of the distance between the parents and the child. *See* Tex. Fam. Code Ann. § 153.316. Specifically, section 153.316 includes the following for the exchange of the child between parents:

> (1) the managing conservator shall surrender the child to the possessory conservator at the beginning of each period of the possessory conservator's possession at the residence of the managing conservator;
> (2) if the possessory conservator elects to begin a period of possession at the time the child's school is regularly dismissed, the managing conservator shall surrender the child to the possessory conservator at the beginning of each period of possession at the school in which the child is enrolled;
> (3) the possessory conservator shall be ordered to do one of the following:
>> (A) the possessory conservator shall surrender the child to the managing conservator at the end of each period of possession at the residence of the possessory conservator; or
>> (B) the possessory conservator shall return the child to the residence of the managing conservator at the end of each period of possession, except that the order shall provide that the possessory conservator shall surrender the child to the managing conservator at the end of each period of possession at the residence of the possessory conservator if:

(i) at the time the original order or a modification of an order establishing terms and conditions of possession or access the possessory conservator and the managing conservator lived in the same county, the possessory conservator's county of residence remains the same after the rendition of the order, and the managing conservator's county of residence changes, effective on the date of the change of residence by the managing conservator; or

(ii) the possessory conservator and managing conservator lived in the same residence at any time during a six-month period preceding the date on which a suit for dissolution of the marriage was filed and the possessory conservator's county of residence remains the same and the managing conservator's county of residence changes after they no longer live in the same residence, effective on the date the order is rendered[.]

Tex. Fam. Code Ann. § 153.316.[5] This means that Father as possessory conservator

shall pick up C.E.H. from Mother's residence, who is the "managing" or "primary"

---

[5] We note that although the statute refers to parents as managing and possessory conservators, under section 153.251 titled "Policy and General Application of Guidelines" the family code states that "[t]he guidelines established in the standard possession order are intended to guide the courts in ordering the terms and conditions for possession of a child by a parent named as a possessory conservator or as the minimum possession for a joint managing conservator." Tex. Fam. Code Ann. § 153.251. Additionally, section 153.252 states that there is a rebuttable presumption that the standard possession order in subchapter F, provides the minimum possession for a parent named joint managing conservator and is in the best interest of the child. Tex. Fam. Code Ann. § 153.252. Our sister courts have held that section 153.316 applies to parties who are named joint managing conservators. *See Mason-Murphy v. Grabowski*, 317 S.W.3d 923, 926 n.4 (Tex. App.—Austin 2010, no pet.); *Weldon v. Weldon*, 968 S.W.2d 515, 517 (Tex. App.—Texarkana 1998, no pet.); *In re E.E.*, No. 14-16-00685-CV, 2017 WL 4273194, at *3 (Tex. App.—Houston [14th Dist.] Sept. 26, 2017, no pet.) (mem. op.).

conservator.[6] While this section then gives two alternatives as to how the child will be returned to Mother after Father's periods of possession, the second option is only available to the parties if at the time of the original order, "the possessory conservator and the managing conservator lived in the same county, the possessory conservator's county of residence remains the same after the rendition of the order, and the managing conservator's county of residence changes[.]" Section 153.316 provides two alternatives to pick up and drop off of the child based on action of the parties after the order is in place. Section 153.316 is a statutorily mandated part of the standard possession order, and the trial court erred by limiting the return of C.E.H to only Mother's residence, absent an agreement by the parties to limit section 153.316. *See Id.* § 153.316(3)(A),(B) (emphasis added); *see also In re K.N.M.*, 2009 WL 2196125, at \*11–12, \*10 (explaining that section 153.316 contains conditions that "are statutorily-required parts of the standard possession order regardless of distance, and the parties agreed to the standard possession order for parents living

---

[6] The Texas Family Code states that parents may either be appointed sole managing conservator or joint managing conservators and, "if the parents are or will be separated, shall appoint at least one managing conservator." Tex. Fam. Code Ann. § 153.005(a); *see also In re W.B.B.*, No. 05-17-00384-CV, 2018 WL 3434588, at \*3 (Tex. App.—Dallas July 17, 2018, no pet.) (mem. op.) (citations omitted) (explaining that by appointing one parent as the parent to designate the exclusive residence of the child, "[p]lacing the power for those functions in the hands of a single party was intended to achieve stability in custodial issues [and] [i]t is this power that makes [a parent] 'primary' as that shorthand term is used, not the number of days [the parent] has possession of [the child]").

16

more than 100 miles apart[,] [which] . . . does not conflict with the parties' agreement"). We sustain Father's second issue in part.

**Issue Three: Exclusive right to Enroll the Child in School**

In his final issue, Father argues that "there is a complete absence of vital fact to support the order that [Mother] have the exclusive right to enroll the child in school."

Texas Family Code section 153.134(b) provides that in rendering an order regarding conservatorship, the court shall:

> (1) designate the conservator who has the exclusive right to determine the primary residence of the child and:
> >    (A) establish, until modified by further order, a geographic area within which the conservator shall maintain the child's primary residence; or
> >    (B) specify that the conservator may determine the child's primary residence without regard to geographic location;
> (2) **specify the rights and duties of each parent regarding the child's physical care, support, and education**;
> (3) include provisions to minimize disruption of the child's education, daily routine, and association with friends;
> (4) allocate between the parents, independently, jointly, or exclusively, all of the remaining rights and duties of a parent as provided by Chapter 151; and
> (5) if feasible, recommend that the parties use an alternative dispute resolution method before requesting enforcement or modification of the terms and conditions of the joint conservatorship through litigation, except in an emergency.

Tex. Fam. Code Ann. § 153.134 (emphasis added). Additionally, section 153.073 of the Family Code defines rights of parents at all times.

17

(a) Unless limited by court order, a parent appointed as a conservator of a child has at all times the right:

> (1) to receive information from any other conservator of the child concerning the health, education, and welfare of the child;
>
> (2) to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the child;
>
> (3) of access to medical, dental, psychological, and educational records of the child;
>
> (4) to consult with a physician, dentist, or psychologist of the child;
>
> (5) to consult with school officials concerning the child's welfare and educational status, including school activities;
>
> (6) to attend school activities, including school lunches, performances, and field trips;
>
> (7) to be designated on the child's records as a person to be notified in case of an emergency;
>
> (8) to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the child; and
>
> (9) to manage the estate of the child to the extent the estate has been created by the parent or the parent's family.

(b) The court shall specify in the order the rights that a parent retains at all times.

*Id.* § 153.073. This includes the right to "*confer* with the other parent to the extent possible before making a decision concerning the health, *education*, and welfare of the child."[7] *Id.* (emphasis added); *see also Bailey v. Bailey*, 987 S.W.2d 206, 210

---

[7] Because both parties agreed to be named "joint managing conservators" section 153.073 confers automatic rights to Father that the parties did not agree to modify. *See In re I.L.*, 580 S.W.3d 227, 234 (Tex. App.—San Antonio 2019, pet. dism'd) (citations omitted) ("A parent who is appointed a conservator has, at all times, various parental rights ancillary to the care, custody, and control of a child, such as the right to receive information and confer with another parent about the child's health, education, and welfare. . . . [A] parent managing conservator has the most significant decision-making rights affecting the care, custody, and control of a

(Tex. App.—Amarillo 1999, no pet.) ("In other words, the court authorized both parents to jointly make decisions 'to the extent possible,' about the [child's] health, education, and welfare[,] . . . [and], it implicitly bound [the parents] with the duty to make the decisions jointly, to the extent possible.).

The parties entered into a rule 11 agreement that only stated they would be C.E.H.'s joint managing conservators and Mother would be the conservator with the right to designate the child's primary residence. A trial court's decision to grant a conservator the exclusive right to designate the primary residence and to enroll the child in school is not always "arbitrary" or "unreasonable" because the two rights correspond with each other. *See In re S.H.,* No. 02-15-00360-CV, 2017 WL 2871682, at *6 (Tex. App.—Fort Worth July 6, 2017, no pet.) (mem. op.) (explaining that "the designation of a child's primary residence often determines which public schools the child may attend"). But this relationship between the two rights does not necessarily lead to the assumption that the conservator granted the exclusive right to designate the primary residence should in turn have the exclusive right to enroll the child in school. *In re Cole*, No. 03-14-00458-CV, 2014 WL 3893055, at *3 (Tex. App.—Austin Aug. 8, 2014, no pet.) (mem. op.). The record is

child. Conversely, a parent who is not appointed a conservator has none of these rights.").

devoid of any evidence that the parties agreed to have Mother designated as the conservator to have the exclusive right to enroll C.E.H. in school. Absent an agreement between the parties that Mother be appointed the conservator with the exclusive right to enroll the child in school, the trial court abused its discretion and did not strictly comply with the parties' agreement. *See Chislom,* 209 S.W.3d at 98. We sustain Father's third issue.

## Conclusion

Accordingly, we affirm those portions of the trial court's judgment regarding conservatorship and possession and access to the child, we reverse only the portions of the judgment concerning the child support amount Father must pay, the place of surrender of the child after possession, and the provision providing that Mother shall have the exclusive right to enroll the child in school, and we remand this case to the trial court for further determination in accordance with this opinion. *See Patel*, 985 S.W.2d at 252–53; *Clanin*, 918 S.W.2d at 678.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

_____
CHARLES KREGER
Justice

Submitted on December 30, 2019
Opinion Delivered September 24, 2020

Before McKeithen, C.J., Kreger and Horton, JJ.